Good morning, your honors. May it please the court, my name is Jaime Hossel and I represent the appellant in this case, Mr. Piara Singh Gill. The issues before the lower court, before the district court in this matter, involved the reveal of the naturalization application on its merits that was denied by the Citizenship and Immigration Service, or short CIS. The review also included a request that the judge review the violation of the regulations as they pertain to the naturalization applications as well as to the termination of asylum process, and also a constitutional challenge to the termination of asylum regulations itself. The district court held that the mootness doctrine applied to the first claim relating to the termination of asylum status. Next, the district court held that the appellant failed to exhaust his administrative remedies as it relates to the second termination of his asylum status. And lastly, the court indicated that there was no need to address the other arguments because it's prior finding of the failure to exhaust administrative remedies. Despite the district court recognizing that there were other issues, other claims, such as the review of the naturalization application on its merits as well as the constitutional challenge to ATFR 208.24, which is the termination of asylum regulation, the court failed to provide any kind of legal analysis, any kind of decision on those issues itself. The court's conclusion of law that the mootness doctrine and the failure to exhaust administrative remedies could not have applied to the court's jurisdiction to review the naturalization application, nor to the constitutional challenge of the regulation itself. Those types of findings simply don't relate to the issues before the court. The failure to exhaust administrative remedies, to a certain degree, if we read into the decision of the district court, possibly the district court's making the assessment that because the termination, the second termination of the asylum status is now before the administrative law judge, that that's the failure to exhaust the administrative remedies. But that wasn't the issue before the court. The issue before the court was the actual stripping itself of the immigration status. There is no review of that stripping process before the immigration judge. It appears that the district court thought that because there were removal proceedings pending that it lacked jurisdiction. Correct, on both grounds, right. So what is the status of the removal proceedings? It's currently being processed here, and I believe in San Francisco, with the immigration judge. They're waiting, I believe, for a decision from this court as to the pertinent issues. Oh, so they put everything on hold until? That's my belief based on communications with the court. Are you representing? No, he has separate counsel. I'm located in Los Angeles, and he has separate counsel here in San Francisco. The government has even conceded in its briefs that the immigration, I'm sorry, the district court judge also failed to provide any kind of legal analysis or a decision as to the naturalization application denial. Now, the government goes on further and says, well, it was harmless error. That's not necessarily correct. This court specifically issued by name precedent upon the lower court in Bellahardo. Bellahardo specifically indicates and holds that district courts have jurisdiction pursuant to 1421C to review the denial of an application for naturalization, whether or not a removal proceeding is pending. Right, but the jurisdiction is limited to the specific basis for the denial. Right. There can't be other issues, but the specific basis for the denial can be reviewed. That is correct. In Bellahardo, the applicant had been denied under 1429. 1429 is basically a statute that says, well, the attorney general can't recognize or can't consider the naturalization application while the removal proceedings are pending. That's not true in this case. In this case, the actual naturalization application was decided on the merits. The actual citizenship and immigration services made a determination that this individual lacked good moral character. Now, for the alleged fraud, that goes into the actual specifics of the case. That was actually not discussed before the district court because we never got that far. But that would entail the fraudulent activity of either my client or that of Officer Mark Temple in going to a discussion on those issues. But it was never actually explored before the immigration or before the district court because we never got that far. The relief that is being requested by the appellant is exactly what is provided for in the statute. The court, the district court, is able to make its own findings of fact, its own conclusions of law, after the noble review hearing. Right. But that's not true regarding the asylum proceedings. That is correct. Okay. So you're not seeking any relief as to the asylum proceedings while there are removal proceedings pending, are you? Correct. Okay. We're not seeking the immigration ‑‑ I'm sorry, the district court judge to stop the immigration judge from continuing with this process on order telling the immigration court to terminate proceedings at all. The relief being requested is exactly what the statute encompasses. Issue statements of fact, its findings of fact. But not on the asylum though. Not on the asylum. You did challenge the termination of asylum. Yes. What's your position on that? It is a challenge to the constitutionality of the regulation itself. Okay. Now, it is well accepted that the administrative law judge and the agency cannot determine the constitutionality of its own regulations and its own laws. So to apply the mootness doctrine or to fail to exhaust the administrative remedies to that context is inapplicable. Right. But your brief was a ‑‑ I mean, it sort of was a little confusing because I thought you were ‑‑ the first termination was rescinded. Yes. Yes. I believe that the administration, the agency did cure the notice problems, the violation of the regulations to the extent that notice wasn't provided to the proper attorney of record, notice to attend the actual interview. They were cured. And mootness did apply to those claims. Absolutely. What it didn't apply to was the constitutional ‑‑ the challenge to the constitutionality of the regulation. Okay. Not as applied, but ‑‑ On its face. On its face. Okay. I can understand that. The ‑‑ now, I can ‑‑ we explored in the briefs before the Court the actual concerns that we have with the constitutionality of the regulation. But to be quite candid with the Court, I don't believe it's properly before this Court. It should have been argued. The issue that ‑‑ so the issue that you want the district ‑‑ you want us to send it back to the district court to consider. On both the naturalization review, on its merits, as well as the constitutionality challenge to the regulation. If there's any specific questions, I'll reserve my time for rebuttal. I think we can hear from the public. Thank you. Good morning. May it please the Court. Melanie Proctor, Assistant United States Attorney, and I represent the respondent appellees in this matter. I'd like to first address opposing counsel's statements regarding the constitutionality of the termination regulation. There was never an articulated claim that the regulation was unconstitutional. Rather, it was simply stated in the prayer for relief. So it's the government's position that that claim was not properly raised below. And it was ‑‑ there was nothing to address. But even if the Court ‑‑ Well, the Court could have given an opportunity to amend if the Court was concerned that the issue had not been fleshed out. That's correct, Your Honor. And it was argued at the motion hearing. However, there was nothing in the complaint that explained where there was a flaw in the regulation. Well, do we have anything before us other than the issue of subject matter jurisdiction? The district court? No, Your Honor. There's nothing there. I would like to point out the regulation tracks the language in the termination statute. But if that's not before us, what difference does it make? Because there would be no ‑‑ there would be no point in remanding to the district court where it's clear that the regulation itself is not ultravirus. But I'll set that issue aside. As far as the issues raised with the naturalization application, the government has never argued that the district court lacked jurisdiction to review the naturalization application. The argument was that there was no effective relief to be provided. And this case is very close to the Sixth Circuit's decision in Zayed, the United States, which was cited with approval in Bellaharra v. Schlitgen by this court, in that there was a decision on the merits of the naturalization application. The alien instituted proceedings in district court, and then the notice to appear was issued. And in Zayed, the Sixth Circuit concluded that while there was jurisdiction, limited jurisdiction, there was no effective relief to be provided, because the only relief that the district court could provide would be to order the attorney general to naturalize the person, but that would be in contravention of 8 U.S.C. Section 1449. I don't think our cases are ‑‑ I don't think our cases follow that view. Our cases specifically say that district courts have authority to review the basis upon which the naturalization application was denied. Your Honor, that language is in Bellaharra. However, Bellaharra also states at 1047 that where Bellaharra asserted that the district court could declare that he was eligible for naturalization, that would be an improper advisory opinion, because the attorney general could not do anything with that decision while removal proceedings were pending. And that is the argument that was put forth by the government below and left unaddressed by the district court. But the district court said it didn't have jurisdiction at all. The district court only addressed the asylum arguments and just refrained from deciding any of the other issues that were raised by the government, dismissed the case as a whole. Do you have an objection to us remanding the case for the district court to actually rule on the naturalization application and whether it has jurisdiction or not? It is our position that remand would be futile because there's nothing for the district court to do. And this Court may affirm the district court on any basis found in the record. But the district court needs to apply our precedent in view of the facts in this case. Yes, Your Honor. Because in Bellaharra we said section 421C plainly confers jurisdiction to review the denial of an application for naturalization on district courts. Yes, Your Honor, and the case continued on to state that a decision that looked at the merits of the application and either rejected them or affirmed them would be an advisory opinion. Where is that? That is found at page 1047 in Bellaharra. It says the district courts have jurisdiction to review the denial, but the scope of review is limited to such denial. Yes, Your Honor. So now where is the language you're talking about? It's above that section in the paragraph that begins with Bellaharra maintains that even if this is so and the district court lacks jurisdiction to review the denial of the naturalization application, the agency should terminate the removal proceedings. That's different than reviewing the denial of the naturalization application. Yes, we said that it would be advisory to say that the agency should terminate removal proceedings. Those are two separate things. A naturalization proceeding is on one track and the removal proceedings are on a different track. The language you're quoting is talking about the removal track. Yes, Your Honor, and actually in Gil's reply brief he makes clear that that's precisely what he seeks. He states that if the district court were to find that there was no fraud in his asylum application and he had lawfully gained permanent resident status, then there would be no choice but to terminate the removal proceedings. But that's a different issue that we would perhaps get to down the road. But for right now, our precedent says that the district court has jurisdiction and the obligation to address whether or not the denial of the naturalization application was proper. Your Honor, Bellaharra is distinguishable from this case because of the fact that here there was a decision on the merits of the naturalization application. It was not denied simply because of 8 U.S.C. section 1429. And in Bellaharra, there was no examination of 1421A, which states that only the attorney general or the authority to whom he's delegated, only that agency has the authority to naturalize an individual. You make that argument to the district court.  But it wasn't reached. It wasn't reached. That's the issue. So if Your Honors have no other questions, I'll submit on the briefs and ask. I do have one. I want to understand your position that the district court does have the authority to review the decision on naturalization, correct? Yes, Your Honor. It's the government's position that the district court does have jurisdiction to review the naturalization decision. However, there's no effective relief to be provided. Well, it's advisory to whom? It would be an advisory opinion, in effect, to the immigration court. Right. So that immigration court is not necessarily obligated to follow it. But it has the decision of the district court as to whether or not it was properly decided. So it would seem to me it would be something that they would certainly take into consideration if it were not properly decided. That the immigration judge would take the district court's opinion into consideration? Yes. Yes, that's certainly the effect it would have on a removal proceeding. Well, if that's the case, why aren't we going ahead with the judge reviewing it as the statute requires? Because, Your Honor, the relief to be provided under 1421C is an order compelling the attorney general to approve the application on the facts that were before the district court. But the attorney general must also review any after-arising events in order to naturalize an individual. And so the attorney general would be forced to consider the application as forbidden by 8 U.S.C. Section 1429. But you could make that same argument in asylum cases. You know, we review asylum cases all the time, and then the attorney general still has to exercise discretion after we say whether or not the asylum proceedings comported with the law. So why aren't those advisory opinions? Those come to the court through a different posture after an alien has exhausted administrative remedies in immigration court and before the Board of Immigration Appeals, and the decision is, I believe, whether the events that occurred in the lower proceedings were correct. In this case, it's a different track. So what difference does it make in terms of whether or not it's an advisory opinion or not? Because, as stated by this court in Bellaharrow, advisory opinions are improper. I don't believe that an asylum decision from this court is actually an advisory opinion, because it's a decision that reverses what has occurred before. Why couldn't the naturalization be the same thing? If you reverse the decision saying it was improper, go back and look at it again. Why wouldn't that be the same premise? Because the issue, Your Honor, is that the attorney general would then be bound by 1429 to not comply with the court's order, because 1429 ---- No, because I thought that when we went around this earlier, we said that you could only review on the ground that the agency used to deny the naturalization. So I don't see how there would be a conflict if there were another ground. The conflict would be that if removal proceedings were still in place, if the decision from the district court did not cause the termination of removal proceedings, if removal proceedings were going forward, the attorney general could not revisit the naturalization application while those removal proceedings were in place. It does seem very circular, Your Honor. But that's the conflict in the way this ---- That's the system you have. That's the system. This isn't the first odd system we've run into. Right, Your Honor. Thank you, Your Honor. We ask that you affirm the decision of the district court. Thank you. I believe the Court adequately addressed any responses that I would have made to the Court regarding her arguments. I would just note one additional fact, that the effect of the end result of the district court order, in all real terms, probability will have an effect on the immigration proceedings. The basis of the notice to appear of the immigration court itself was because of what occurred at the naturalization interview, and subsequently at the termination of asylum process. So in effect, down the road, it's incumbent upon both the government and the respondent to take action if there's a finding from the district court as to what occurred regarding the good moral character of the alien. Now, it's a double-edged sword. If the district court finds, after the noble review, that in fact fraud was committed, then that buttresses the argument of the government in the removal procedure. But those are two separate cases. That's correct. The statute itself, the language, provides for independent findings of fact and conclusions of law from the district court. If there's any other questions, I ask that the Court remand, reverse the decision of the district court and remand for further proceedings. Thank you.
judges: Hug, Schroeder, Rawlinson